# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

          Plaintiff,

vs.                                       CR No. 19-4184 KG

SAVANNAH PADILLA

          Defendant.

## DEFENDANT'S OPENING BRIEF ON APPEAL TO THE DISTRICT COURT

COMES NOW, the Defendant, Savannah Padilla, through her appointed counsel, Assistant Federal Public Defenders James N. Langell and Stephanie L. Wolf, and respectfully submits this opening brief in support of her appeal to this Court for de novo review of the Magistrate Judge's Order on Defendant's Motion for Reconsideration. (Doc. 50.) Ms. Padilla requests an evidentiary hearing and an order releasing her from pretrial detention at the Otero County Prison Facility pursuant to pursuant to 18 U.S.C. 3142(f) and 18 U.S.C. 3142(i) and Fifth and Sixth Amendments to the United States Constitution.

## I.     Statement of the Case

The Indictment charges Ms. Padilla with conspiracy to commit carjacking, in violation of 18 U.S.C. § 371; carjacking and aiding and abetting, in violation of 18 U.S.C. § 2119(1) and 2; and using, carrying, and brandishing a firearm during and in relation to a crime of violence and aiding and abetting, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2 on September 7-8, 2018, in Grant County, New Mexico. (Doc. 3.)

The Indictment charges the co-defendant in this matter, Daniel Hernandez, with: (1) felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924 on September 6, 2018; (2) felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and

924 on September 7, 2018; (3) theft of a firearm, in violation of 18 U.S.C. § 924(l) on September 7, 2018; (4) possession of a stolen firearm, in violation of 18 U.S.C. §§ 922(j) and 924 on September 7, 2018; (5) carjacking, in violation of 18 U.S.C. § 2119(1) on September 7, 2018; (6) using, carrying, and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) on September 7, 2018; (7) conspiracy to commit carjacking, in violation of 18 U.S.C. § 371 on September 7-8, 2018; (8) carjacking and aiding and abetting, in violation of 18 U.S.C. § 2119(1) and 2 on September 7-8, 2018; (9) using, carrying, and brandishing a firearm during and in relation to a crime of violence and aiding and abetting, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2 on September 7-8, 2018; and (10) felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924 on September 9, 2018, all in Grant County. (Doc. 3.)

All counts are currently joined for trial on the October 2020 trailing docket.

On March 2, 2020, Ms. Padilla was ordered detained and is currently held in custody at the Otero County Prison Facility. (Doc. 16.) On June 17, 2020, Ms. Padilla filed a Motion for Reconsideration of Detention Order and for Temporary Release to Prepare Defense. (Doc. 45.) On June 24, 2020, United States Magistrate Judge Carmen E. Garza entered an Order on Defendant's Motion for Reconsideration. (Doc. 50.)

## II.    Statement of the Facts

On March 2, 2020, Ms. Padilla was ordered detained and is currently held in custody at the Otero County Prison Facility. (Doc. 16.) Since her detention at the facility COVID-19 has infected a large percentage of detainees at the facility. As of June 16, 2020, the Otero County Prison Facility reported 570 total cases among inmates. *See DOH: 132 new cases of COVID-19, including more in Otero County Prison Facility*, https://nmpoliticalreport.com/2020/06/15/doh-132-new-cases-of-covid-19-including-more-in-otero-county-prison-facility/. As of June 16, 2020, three inmates

at the Otero County Prison facility have died of COVID-19 including a 31-year-old man. The COVID-19 pandemic poses an imminent threat to the health and safety of Ms. Padilla. Moreover, Ms. Padilla is unable to prepare her defense while detained at Otero County Prison Facility. Additionally, Ms. Padilla has updated her release plan. If released Ms. Padilla would not return to Silver City, New Mexico, where the alleged offenses occurred. Rather, if released Mr. Padilla would reside with her great-grandparents in their home in Las Cruces.  Ms. Padilla's grandparents have a stable and safe home and they will serve as her third-party custodians.

The COVID-19 outbreak has radically changed the ability of counsel to adequately confer with, develop rapport, and effectively advise Ms. Padilla. This is especially true in this case which presents emotionally fraught matters, voluminous discovery, and complex legal issues. Neither of Ms. Padilla's attorneys has met her in person for more than a few minutes (Ms. Wolf at her initial appearance, before she was even representing Ms. Padilla, and Mr. Langell at the preliminary and detention hearing). This lack of personal contact hinders counsel's ability to build the trust and rapport that are critical to the attorney-client relationship.

Defense counsel are not able to speak to Ms. Padilla at length, since phone calls at Otero are time limited, typically in 30 minute slots that result in about 25 minutes of time with the client on the line. Telephone communication does not permit Ms. Padilla to review the discovery in her own case. There are 10 videos and two audio recording that she has never seen or heard. Furthermore, Ms. Padilla has not seen the paper discovery. While this could in theory be mailed, Ms. Padilla lives in an open dorm with very limited privacy, so mailing her paper discovery could invite problems that Ms. Padilla wishes to avoid.

The offense in question took place in September of 2018. In the interim, Ms. Padilla carried, gave birth to, and began to raise her baby, who is now a year old.  At the time of her arrest,

she had a new partner and was in a completely different place in her life. Fully exploring Ms. Padilla's memories of this event and reckoning with any discrepancies between her recollection and other evidence in the case—as any reasonable attorney must do in preparation for trial or a debrief—is virtually impossible when she cannot hear her own prior statements or see the other evidence for herself.

The time-limited nature of these calls makes adequate preparation for trial (or even a potential debrief) impossible. Ms. Padilla has suffered severe trauma and abuse throughout her life, and the facts of the instant case center on a dangerous man with whom she was in a relationship. This is a story that takes time and trust to tell. It is not reasonable to expect Ms. Padilla to be able to communicate this story completely with an attorney she has barely met, in 25 minute increments, by phone.

An effective defense attorney must attempt to evaluate the strengths and weaknesses of Ms. Padilla's trial defense, as well as her chances of benefitting from a debrief with the government, in order to help her decide how to proceed. Evaluating either of these things is virtually impossible without being able to sit down with Ms. Padilla and hear her tell the full story, from beginning to end, while observing her face and body language in addition to her words. Counsel cannot do this under the current circumstances, and therefore cannot reasonably advise Ms. Padilla about the relative risks and potential benefits of trial and cooperation.

Furthermore, effective preparation for trial testimony or for a debrief would involve subjecting Ms. Padilla to prolonged questioning on this difficult subject matter, similar to what she would face in a debrief or a cross-examination. 25-minute phone calls do not afford this opportunity, and without the ability to observe her face and body language, it would be impossible to fully evaluate her responses.

After several weeks of attempting to communicate with Ms. Padilla by phone alone, counsel reached the conclusion that this communication was not adequate. Ms. Wolf obtained special permission from her supervisor for an in-person visit at Otero due to the nature of the case, the history of the client, and the fact that phone communication had not proved sufficient. In response to Ms. Wolf's attempt to schedule a visit, Otero responded that in-person attorney visits were not allowed due to the COVID-19 outbreak.

Ms. Padilla's past trauma and her mental and emotional state is relevant to both her trial defense and potential plea negotiations. Although an in-person evaluation would be vastly preferable to one conducted by electronic means, undersigned counsel identified an expert who is willing to conduct an evaluation by video, in an attempt to make accommodation to the circumstances. Mr. Langell has twice reached out to the United States Marshal Service to attempt to arrange this, but has not yet received a response.

This is not a typical case. Due to the complexity of the factual and legal issues and voluminous discovery defense counsel needs to develop trust and rapport with Ms. Padilla in order to provide effective assistance of counsel, evaluate potential defenses, provide competent advice during plea negotiations, and meaningfully prepare for trial. Counsel is not able to provide effective assistance of counsel while Ms. Padilla is detained at Otero County Prison Facility.

## III.    Standard of Review

"If a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). "When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts de novo and must make an independent determination of the proper pretrial detention or conditions for release." *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003). When considering an appeal from an order of detention,

the district court is governed by 18 U.S.C. § 3142, which provides that a defendant may be detained

pending trial only if the Court finds "that no condition or combination of conditions will reasonably

assure the appearance of the person as required and the safety of any other person and the

community." *Cisneros*, 328 F.3d at 616 (quoting 18 U.S.C. § 3142(e)(1)). Pursuant to 18 U.S.C. §

3142(g), the district court takes into account the available information concerning the nature and

circumstances of the offense, the weight of the evidence against the defendant, the history and

characteristics of the defendant, and the nature and seriousness of the danger to the community

that would be posed by the defendant's release.

## IV.    Argument

### A.    The Bail Reform Act authorizes release of Ms. Padilla

Under the Bail Reform Act, a district court can order pretrial detention only if it concludes

"that no condition or combination of conditions will reasonably assure the appearance of the

person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).

In its determination the court evaluates the following factors: (i) the nature and circumstances of

the offense charged; (ii) the weight of the evidence against the person; (iii) the history and

characteristics of the person, including the person's character, family ties and whether the person

was on release pending trial; and (iv) the nature and seriousness of the danger to any person or the

community that would be posed by the person's release." 18 U.S.C. § 3142(g).

Where a person is charged with certain enumerated offenses, as here, a rebuttable

presumption arises that "no condition or combination of conditions" can provide the requisite

assurances. 18 U.S.C. § 3142(e)(3). "Once the presumption is invoked, the burden of production

shifts to the defendant . . . . The defendant's burden of production is not heavy, but some evidence

must be produced." *United States v. Stricklin*, 932 F.2d 1353, 1354–55 (10th Cir. 1991). The

government always bears the burden of persuasion and must demonstrate dangerousness by clear

and convincing evidence and risk of flight by a preponderance of the evidence. *Id.*; *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).

Two provisions of the Bail Reform Act authorize the release of Ms. Padilla. First, a detention "hearing may be reopened . . . at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the [detention] hearing . . . " 18 U.S.C. § 3142(f)(2). Also, the "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of the United States marshal or other appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). Both provisions authorize the release of Ms. Padilla.

### B.    The COVID-19 pandemic presents new information supporting release

The Bail Reform Act authorizes reopening a detention hearing where "information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f).

Ms. Padilla has not tested positive for the virus yet, but it is clear that the handling of COVID-19 in Otero County Prison Facility is "a huge failure in the federal system" and noted that the facility "didn't take any of our standards for how you visit, how you are training staff, what you do for infection control, mandating that guards and staff have masks" according to New Mexico Governor Lujan-Grisham. *See* D'Ammassa, Algernon, *Federal Inmate Describes COVID-19 Procedures at Otero County Prison Facility*, Las Cruces Sun News (June 12, 2020), available at    https://www.lcsunnews.com/story/news/2020/06/12/new-mexico-coronavirus-otero-county-prison-facility-inmate-questions-safety/5326859002/.  Even with a well-coordinated response, it would be extremely difficult to control the spread of the disease inside the detention facility at this

point.  Upon information and belief, people who tested positive can no longer be isolated individually and are instead being divided into dorms of positive symptomatic, positive asymptomatic, and COVID-negative people.  However, separating people into groups based on test results that can take days to come back means that some of those who were negative at the time of testing will be positive by the time they are sorted into the 'negative' dorm.  The risks of this approach are illustrated by the fact that multiple individuals tested negative and were transferred from Otero to the Luna and Dona Ana County Detention Centers, only to test positive after arriving.  If she remains at Otero, Ms. Padilla is likely to catch the virus which could jeopardize her long-term health.

The risk posed to Ms. Padilla should she contract COVID-19 and the struggle of Ms. Padilla's family, including her one-year-old daughter, as they navigate the health pandemic in her absence, constitute new information that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of Ms. Padilla and the safety the community.

The emergence of the COVID-19 pandemic is a changed circumstance within the meaning of the Bail Reform Act and conditions of release which ensure community safety and Ms. Padilla's appearance can be imposed. Specifically, Ms. Padilla requests she be released to the third-party custody of her great-grandparents. Ms. Padilla would reside with her great-grandparents in their home in Las Cruces with her daughter under the supervision of United States Pretrial Services, with any conditions this Court deems appropriate including electronic monitoring and home confinement. Ms. Padilla submits that changed circumstances suggest conditions of release could assure community safety and her appearance. Furthermore, Ms. Padilla would seriously risk her

health were she to violate social distancing requirements. For these reasons, Ms. Padilla respectfully requests that the Court reopen the detention hearing and grant her pretrial release.

### C.     The Fifth Amendment requires pretrial release because the pandemic presents a significant harm outweighing the government's interest in detention

The conditions of confinement at Otero County Prison Facility have abrogated Ms. Padilla's Fifth Amendment right to due process. A pretrial detainee's freedom from pretrial confinement is a fundamental right protected by the Due Process Clause. *United States v. Salerno*, 481 U.S. 739, 755 (1987). Any government action infringing on this right must be narrowly tailored to achieve a compelling government interest. *Id.* The constitutional protections of pretrial detainees arise under the Fifth Amendment Due Process Clause, which provides protection even greater than the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The Eighth Amendment, which applies to persons convicted of criminal offenses, allows punishment if it is not cruel and unusual, but the Fifth Amendment's due process protections do not allow pretrial punishment at all. *Id.*

Although the government has an interest in detaining a defendant to secure her appearance at trial, government may only subject a detainee "to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Id.* at 536–37. Notably, a court may infer an intent to punish "if a restriction or condition is not reasonably related to a legitimate governmental goal—if it is arbitrary or purposeless." *Khan v. Barela*, 2020 WL 1488762, at *3 (10th Cir. Mar. 26, 2020) (citation omitted).

In addition, pretrial detainees have a substantive due process interest in freedom from deliberate indifference to their medical needs. *See Miranda v. County of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). The Supreme Court explained in *Brown v. Plata* that a prisoner "may suffer or die

if not provided adequate medical care. A prison that deprives prisoners of basic sustenance, including adequate medical care, is incompatible with the concept of human dignity and has no place in civilized society." 563 U.S. 493, 510–11 (2011). While prisoner claims in *Brown v. Plata* arose under the Eighth Amendment, pretrial detainees likewise have the legal right to adequate medical care, given that their rights are at least as great as those of convicted persons being punished by imprisonment.

In non-pandemic conditions, the Supreme Court has held a person's detention does not inexorably lead to the conclusion that the government has imposed punishment, as the Bail Reform Act's conditions of confinement were narrowly drawn to effectuate the government's regulatory interest in community safety. *See Salerno*, 481 U.S. at 470. Thus, federal courts have long recognized there is no greater necessity than keeping a defendant alive, no matter the price. *See United States v. Scarpa*, 815 F. Supp. 88, 93 (E.D.N.Y. 1993) (pretrial defendant with AIDS facing murder charges released on bail because of the "unacceptably high risk of infection and death on a daily basis inside the MCC"). While Ms. Padilla is accused of serious crimes, her health and life should not be endangered by the COVID-19 pandemic. Due process requires pretrial release because the danger to the health and safety of Ms. Padilla posed by the COVID-19 pandemic presents a significant harm outweighing the government's interest in her continued pretrial detention.

**D.    Temporary release is necessary due to the pandemic and for preparation of the defense**

The Bail Reform Act provides for the "temporary release" of a person in pretrial custody "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). If a person is detained, Section 3142(i) provides a "limited safety valve provision enabling courts to re-examine detention

decisions to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." *United States v. Grimes*, No. 16-59, 2020 WL 3056060, at *6 (E.D. Pa. Jun. 9, 2020) (internal quotation marks and citation omitted) (granting motion for pretrial release under 18 U.S.C. § 3142(i)).

The risk of death or serious injury to Ms. Padilla, given the conditions of incarceration and the ongoing health crisis, necessitates her temporary release until the pandemic has ended. *See* 18 U.S.C. § 3142(g)(3)(A) (listing a person's "physical and mental condition" as one of the release factors to be considered in determining bail). The judicial response to COVID-19 reflects the extreme exigency of the present circumstances. Numerous courts have granted release to inmates due to COVID-19.

In *United States v. Garlock*, for example, the district court extended the defendant's date for surrendering to serve an already-imposed prison sentence until September 1, 2020, concluding that no one should be entering BOP custody absent "truly extraordinary circumstances":

> By now it almost goes without saying that we should not be adding to the prison population during the COVID-19 pandemic if it can be avoided. Several recent court rulings have explained the health risks—to inmates, guards, and the community at large—created by large prison populations. The chaos has already begun inside federal prisons—inmates and prison employees are starting to test positive for the virus, quarantines are being instituted, visits from outsiders have been suspended, and inmate movement is being restricted even more than usual. . . To avoid adding to the chaos and creating unnecessary health risks, offenders who are on release and scheduled to surrender to the Bureau of Prisons in the coming months should, absent truly extraordinary circumstances, have their surrender dates extended until this public health crisis has passed.

*United States v. Garlock*, No. 18-CR-00418-VC-1, 2020 WL 1439980, at *1 (N.D. Cal. Mar. 25, 2020).

A sampling of the court orders granting release based on the pandemic conveys the volume

of building precedent. *See, e.g., United States v. Kennedy*, No. 18-20315, 2020 WL 1493481, F.

Supp. 3d, at *1 (E.D. Mich. Mar. 27, 2020) ("[T]he danger posed to Defendant in the Saginaw

County Jail by the COVID-19 pandemic constitutes an independent compelling reason to 18

temporarily release him from custody."); *United States v. Michaels*, No. SACR 16-76-JVS, 2020

WL 1482553, at *1 (C.D. Cal. Mar. 26, 2020) ("Michaels has demonstrated that the COVID-19

virus and its effects in California constitute 'another compelling reason'" justifying temporary

release under § 3142(i)); *United States v. Harris*, No. CR 19-356, 2020 WL 1482342, at *1 (D.D.C.

Mar. 26, 2020) ("The Court is convinced that incarcerating Defendant while the current COVID-

19 crisis continues to expand poses a far greater risk to community safety than the risk posed by

Defendant's release to home confinement on . . . strict conditions."); *United States v. Perez*, No.

19 CR. 297 (PAE), 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (releasing defendant due

to the "heightened risk of dangerous complications should [h]e contract COVID-19"); *United

States v. Stephens*, No. 15-cr-95 (AJN), 2020 WL 1295155, F. Supp. 3d, at *2 (S.D.N.Y. Mar. 19,

2020) (releasing defendant, given "the unprecedented and extraordinarily dangerous nature of the

COVID-19 pandemic"); *United States v. Sanchez*, No. 18-CR-00140-VLB-11, 2020 WL 1933815,

at *5 (D. Conn. Apr. 22, 2020) (granting motion for compassionate release);*, Martinez-Brooks v.

Easte*r, No. 3:20-CV-00569 (MPS), 2020 WL 2405350, at *13 (D. Conn. May 12, 2020)

("approximately 25 out of 48 COVID-19 related motions for compassionate release have been

granted in this District alone since the crisis began.")

Recently, a federal judge in New Mexico authorized temporary release of a detainee with

high risk factors for COVID-19. United States Magistrate Judge Laura Fashing entered an order

on April 24, 2020, granting temporary release to a defendant charged with an A-level drug offense,

despite previous warrants, a prior drug trafficking conviction, and a previous domestic violence charge. *See United States v. Fernando Ronquillo-Burgos*, 1:19-cr-04658-JCH, Doc. 41 (D.N.M. Apr. 24, 2020). Accordingly, we respectfully request that Ms. Padilla be released pending this health crisis and live with her grandparents, under appropriate release conditions, including home detention, electronic monitoring and any other conditions the Court deems appropriate.

      **E.**    **The Otero County Prison Facility's Outbreak of COVID-19 undermines Ms. Padilla's right to prepare for trial.**

The Otero County Prison Facility where Ms. Padilla is being held does not allow visitation with her attorneys to properly prepare for trial. Counsel for Ms. Padilla was not allowed to enter the facility. Telephone conversations with Ms. Padilla does not allow counsel to review the discovery with Ms. Padilla and to have face-to-face conversations.

Ms. Padilla asserts this Court can fashion conditions to ensure the safety of the community and her appearance pending resolution of her case. First, Ms. Padilla can reside with her family in Las Cruces, New Mexico. Second, the Court can order temporary release on ankle monitor and house arrest conditions. Thirdly, by releasing Ms. Padilla from the facility will protect her from contracting COVID-19. Lastly, Ms. Padilla's temporary release would allow her to meet with her counsel to properly prepare for trial. Ms. Padilla respectfully requests this Court to order her temporarily released to her approved third-party custodian pursuant to a $5,000 unsecured bond and ankle-monitor/house arrest conditions.

      **F.**    **The Sixth Amendment requires pretrial release of Ms. Padilla to prepare her defense and ensure effective assistance of counsel**

The conditions of confinement at the Otero County Prison Facility have abrogated Ms. Padilla's Sixth Amendment rights to prepare her defense and the effective assistance of counsel. Until she is released, Ms. Padilla will continue to suffer violations of her constitutional rights.

The Sixth Amendment right to counsel is the cornerstone of our adversarial system of criminal justice. A detention facility violates the Sixth Amendment when it "unreasonabl[y] inter-fere[s] with the accused person's ability to consult counsel." *Benjamin v. Fraser*, 264 F. 3d 175, 185 (2d Cir. 2001). In *Benjamin*, the Second Circuit held that New York City correctional facilities violated the right to counsel when defense attorneys "routinely face[d] unpredictable, substantial delays in meeting with clients" and were "forced to wait between 45 minutes and two hours, or even substantially longer, after arriving at a facility to see a client. 264 F.3d at 179. Yet, the circumstances and conditions contemplated by the Second Circuit in *Benjamin* pale in comparison to those that Ms. Padilla has been forced to endure.

The Otero County Prison Facility has suspended all visitation including attorney visits. *See* https://cd.nm.gov/nmcd-prison-facilities/otero-county-prison-facility/. ("Effective immediately, all visitation is suspended until further notice. This includes the suspension of contact, non-contact, and attorney visits in all prison facilities.") For months, Ms. Padilla's only means of communicating with counsel has been through time-limited telephone calls. Defense counsel has been denied entry at the Otero County Prison Facility and time-limited telephone calls are inadequate to prepare for trial. While we have been able to speak with Ms. Padilla to confirm some of the details contained herein, the meeting durations and ability to communicate have been severely curtailed. Conducting substantive, meaningful discussion of topics critical to the defense has been nearly impossible. Ultimately, Ms. Padilla is being deprived of privileged communication with counsel. This is inconsistent with the constitutional right to counsel.

Significantly, Ms. Padilla has suffered a complete inability to review the discovery that has been produced. And as her case progresses, there are no assurances that she will be able to review her discovery in a meaningful manner, or that we will have a workable means for reviewing it with

her. Perhaps of greater concern is the fact that defense team personnel are unable to adequately communicate with Ms. Padilla to prepare and support anticipated theories of defense for trial. In order to prepare her defense and receive effective assistance of counsel, Ms. Padilla must be released from custody. These extraordinary and unprecedented times require judicial intervention to safeguard Ms. Padilla's constitutional rights.

**G.      Release is necessary for Ms. Padilla to receive effective assistance of counsel**

The COVID-19 outbreak has radically changed the ability of counsel to adequately confer with, develop rapport, and effectively advise Ms. Padilla. This is especially true in this case which presents emotionally fraught matters, voluminous discovery, and complex legal issues. Neither of Ms. Padilla's attorneys has met her in person for more than a few minutes. This lack of personal contact interferes with counsel's ability to build the trust and rapport that are critical to the attorney-client relationship.

An effective defense attorney must attempt to evaluate the strengths and weaknesses of Ms. Padilla's trial defense, as well as her chances of benefitting from a debrief with the government, in order to help her decide how to proceed. Evaluating either of these things is virtually impossible without being able to sit down with Ms. Padilla and hear her tell the full story, from beginning to end, while observing her face and body language in addition to her words. Counsel cannot do this under the current circumstances, and therefore cannot reasonably advise Ms. Padilla about the relative risks and potential benefits of trial and cooperation.

Furthermore, effective preparation for trial testimony or for a debrief would involve subjecting Ms. Padilla to prolonged questioning on this difficult subject matter, similar to what she would face in a debrief or a cross-examination. Twenty-five-minute phone calls do not afford this opportunity, and without the ability to observe her face and body language, it would be impossible to fully evaluate her responses.

Ms. Padilla's past trauma and her mental and emotional state is relevant to both her trial defense and potential plea negotiations. Although an in person evaluation would be vastly preferable to one conducted by electronic means, undersigned counsel identified an expert who is willing to conduct an evaluation by video, in an attempt to make accommodation to the circumstances. Mr. Langell has twice reached out to the United States Marshal Service to attempt to arrange this, but has not yet received a response.

Due to the complexity of the factual and legal issues and voluminous discovery defense counsel needs to develop trust and rapport with Ms. Padilla in order to provide effective assistance of counsel, evaluate potential defenses, provide competent advice during plea negotiations, and meaningfully prepare for trial. Counsel is not able to provide effective assistance of counsel while Ms. Padilla is detained at Otero County Prison Facility.

**V.      Conclusion**

Circumstances exist that militate in favor of temporarily releasing Ms. Padilla to the third-party custody of her grandparents. Ms. Padilla would reside with her grandparents in their home in Las Cruces with her one-year-old daughter under the supervision of United States Pretrial Services, with any conditions this Court deems appropriate including electronic monitoring and home confinement. Ms. Padilla respectfully requests this Court to order her temporarily released to her approved third-party custodian pursuant to a $5,000 unsecured bond and ankle-monitor/house arrest conditions. Release is necessary for Ms. Padilla to receive effective assistance of counsel.

Based on the foregoing, Ms. Padilla respectfully requests a hearing to present arguments for her release as soon as possible, and that the Court grant the relief requested herein. In light of the current public health crisis, Ms. Padilla consents to waiving her presence at any hearing and to a video or telephonic appearance by her attorneys if the Court would consider such a setting.

Respectfully submitted,

**FEDERAL PUBLIC DEFENDER**
506 S. Main Street, Suite 400
Las Cruces, New Mexico 88001
Telephone: (575) 527-6930

***Electronically filed June 29, 2020***
By:*/s/ James N. Langell*
JAMES N. LANGELL
Assistant Federal Public Defender

and

By:*/s/ Stephanie L. Wolf*
STEPHANIE L. WOLF
Assistant Federal Public Defender